# GREEN *v.* UNITED STATES.

WAIVER OF EXCEPTIONS; EMBEZZLEMENT; COMMISSION MERCHANTS AND FACTORS.

1. Where a defendant indicted for embezzlement as a commission merchant excepts to a ruling of the trial court denying his motion to direct a verdict at the close of the testimony for the prosecution, on the ground that the evidence fails to show that he was a commission merchant, he waives his exception by introducing evidence in his own behalf.

2. One who receives and takes actual possession, or possession by bill of lading, of farm produce shipped to him as agent of the shipper for the purpose of sale, is a factor or commission merchant within the meaning of sec. 838, D. C. Code, punishing embezzlement by factors, commission merchants, and others, although he has no store and his general business is that of a broker.

3. One may be both a factor and a broker, and he may serve his employers in both capacities. When he acts as a broker his liabilities will be governed by the law applicable thereto, and the same is true when he acts as a factor. His rights and liabilities are not governed by the fact that he acts oftener in the one capacity than the other, but rather by the capacity in which he acts in the particular transaction under inquiry.

No. 1522. Submitted May 2, 1905. Decided May 23, 1905.

HEARING on an appeal by the accused from a judgment of conviction of the Supreme Court of the District of Columbia in a prosecution for embezzlement.                          *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. F. Edward Mitchell* for the appellant.

*Mr. Morgan H. Beach,* United States Attorney for the District of Columbia, and *Mr. J. S. Easby-Smith* and *Mr. Jesse C. Adkins,* Assistants, for the United States.

Mr. Justice DUELL delivered the opinion of the Court:

The appellant, Andrew J. Green, was indicted under section 838 of the Code of the District of Columbia, upon the charge that as a commission merchant he had embezzled the proceeds of two car loads of produce intrusted to him for sale. He was tried, convicted by a jury, and sentenced by the court to imprisonment in the penitentiary for a term of two years. From this judgment he has taken this appeal.

Three assignments of error are set forth, but one of them was not pressed, so we are concerned with but two. The first to be considered is that based upon the refusal of the court to direct a verdict for the defendant at the conclusion of the government's case. The ground upon which the motion was based was that the evidence failed to show that he was a commission merchant. The question raised by this assignment of error may be readily disposed of, for it appears, from an examination of the record, that, upon the refusal to grant the motion, the appellant introduced evidence on his own behalf, thereby waiving his exception to the ruling. *Accident Ins. Co.* v. *Crandal,* 120 U. S. 527, 30 L. ed. 740, 7 Sup. Ct. Rep. 685. The matter, however, is of little practical moment, as the second assigned error relates to the question whether the appellant was a commission merchant within the meaning of the section, which question was the basis for the motion for a direction of a verdict.

The second assignment of error involves the correctness of that part of the charge which is as follows:

"If you find, from the evidence, *that the correspondence which has been received in evidence is all the correspondence on*

*the subject,* and if you further find that it constituted the whole of what transpired between the defendant and Greenough & Company, the defendant was, as a matter of law, a commission merchant, and the potatoes and onions were the property of Greenough & Company."

The real question raised by the exception to the above portion of the charge, and the real gist of the case, is whether the correspondence set forth in the record shows that the appellant was a commission merchant within the meaning of the section under which he was prosecuted. We are not inclined to consider with any great degree of technicality whether the question is properly raised upon the record as presented, but prefer to examine such record, and determine from a full and fair consideration of it whether it was legally shown that the appellant was a commission merchant. So much of the section under which the indictment was found as is necessary to be considered, reads:

"Any warehouseman, factor, storage, forwarding, or commission merchant  *  *  *  who, with intent to defraud the owner thereof, sells, disposes of, or applies, or converts to his own use any property intrusted or consigned to him, etc., shall be deemed guilty of embezzlement," etc. [31 Stat. at L. 1325, chap. 845.]

We take it that the section is to be so construed that the fair and ordinary meaning be given to its terms. We think they are clear and unambiguous.

This brings us to the question whether it has been shown by the correspondence, which was received in evidence and is set forth in the record, that the appellant was a commission merchant as that term is ordinarily used and as properly defined. The evidence at the trial, as disclosed by the record, is to the effect that F. M. Greenough & Co. were merchants at Vassar, Michigan, and had for several years sold produce through the appellant as a broker; that in November, 1902, they shipped to themselves, at Washington, a car load of potatoes; that on the 25th of the month they wired appellant notifying him of the shipment and authorizing him to sell at sixty cents or better;

that on the same day they sent a letter to him, and also drew a draft, attached thereto the bill of lading, and sent them to a bank in this city. The letter advised him to the same general effect as the telegram, and further directed him to have his customers pay the draft and remit to them the balance. An invoice was enclosed in the letter. November 29th, appellant wrote the firm, acknowledging the receipt of the telegram, stated that he could not sell at sixty, and asking that the bill of lading be sent him on the ground that he could then sell to better advantage. December 3d he acknowledged receipt of the letter and stated that he had not received the invoice, adding: "If you had mailed me bill of lading direct, would save all this trouble and expense, as all my shippers do who know me." The same day he wired the firm that he could sell the potatoes if the railroad would deliver the car by noon of the following day. Greenough & Company instructed the railroad company to deliver the car load of potatoes to appellant, and also wrote him at the same time notifying him of the sending of the telegram. Some further telegrams and letters passed between the parties, with the result that the potatoes finally came into appellant's possession, who sold and delivered them to the purchaser and received the proceeds, less certain charges. The facts relative to the second transaction—that relating to the onions—are, in substance, that the appellant wired the firm that he had sold a car load of onions for them, whereupon they shipped them to him and sent him a bill for them. On receipt of the onions, he wired the firm that they were frozen, and asking whether he should sell at the best price obtainable, to which they replied by wire to sell as best he could. A letter confirmed the telegram, and in both they also requested appellant to remit for the potatoes formerly sent him. In a later letter they wrote that, as he had the invoice, he should collect for the onions, and remit to them. The appellant took possession of the onions, delivered them to various dealers and received from them the purchase price.

We have thus fully set forth the facts as disclosed by the correspondence which shows that the appellant did not purchase

the produce from the firm, as claimed by him, but rather that he received and took possession of it as the agent of the firm to sell for them, it being in both cases delivered to him for the purpose of sale, and in such manner as clearly made him a factor or commission merchant. Story, Agency, secs. 33, 34. He was intrusted with the possession, management, control, and disposal of the potatoes first, and later of the onions. The two transactions were separate and independent. It is urged on behalf of the appellant that he was not a commission merchant, because he had no store and because his general business was that of a broker. He testified that he had no place of business in the city of Washington, except an office, and that no goods were displayed or sold there; that he had been engaged in the brokerage business for approximately ten years, and that he often bought goods from shippers for and on his own account. Giving him the full benefit of this, however, fails to show that he was not a commission merchant or factor in these two transactions. The case of *Slack* v. *Tucker*, 23 Wall. 321, 23 L. ed. 143, is relied upon as authority for the contention that a person, in order to be held as a commission merchant, must have a store from which to sell the goods intrusted to him. The quotation, which is set forth in appellant's brief as the definition by the court of the term "commission merchant," is a statement of facts proved in that case, and does not purport to hold that a person, in order to be classed as a commission merchant, must make sales at his own store. The opinion of the learned justice who spoke for the court thus defines the term "factor" or "commission merchant:" "The difference between a factor or commission merchant and a broker is stated by all the books to be this, a factor may buy and sell in his own name, and he has the goods in his own possession; while a broker, as such, cannot ordinarily buy or sell in his own name, and has no possession of the goods." Possession of the goods, to the extent that one can sell and give direct possession to the purchaser, is the essential. In the case at bar the appellant had such possession of the potatoes and onions. He took possession of them,

and from him the various purchasers received them. They did not go directly from Greenough & Company to the ultimate purchasers. Nor did they pass through his office or store to the purchasers, but they were delivered to him by the railroad, and he had possession through possession of the bills of lading and also through the drayage company employed by him. Conceding that his general business was that of a broker, he was, as to these two transactions, a factor. One may be both a factor and a broker, and he may serve his employers in both of these capacities. When he acts as a broker his liabilities will be governed by the law applicable thereto; and the same is true when he acts as a factor. His rights and liabilities are not governed by the fact that he acts oftener in the one capacity than the other, but rather by the capacity in which he acts in the particular transaction. In the transactions now under consideration he acted as a factor, and that he was accustomed to act in that capacity is virtually admitted in the letter written by him under date of December 3, 1902. But the number of times he may have acted as a factor, or commission merchant, is not material, and cannot be held as determining whether in the transactions in question he was so acting.

The correspondence clearly shows that he had possession of both the potatoes and onions; that they were the property of Greenough & Company; that he sold them to various parties and received the purchase price. Nothing was wanting to show that, as a matter of law, he was a commission merchant in both transactions. There was no error in the charge as excepted to.

Upon review of the entire record, we find nothing upon which error can be predicated; and we therefore affirm the judgment, and it is so ordered. ·                              *Affirmed.*